**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Jerome C Anderson, Patricia M Barstad, Joan M Barstad, Jane C Craft, Peggy M Cowan, Jerome Anderson as Trustee of the Anderson Family Mineral Trust, John C Anderson, Ray Anderson, Oscar R Anderson, Beatrice Anderson, Donald Tarczanin, Susan Tarczanin, and Cora Anderson, | ) ) ) ) ) ) ) ) ) | **ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:09-cv-00064 |
| Hess Corporation, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| Hess Corporation, | ) ) | |
| Counterclaimant, | ) ) | |
| vs. | ) ) | |
| Jerome C. Anderson, et al., | ) ) | |
| Counterdefendants. | ) | |

_____

Before the Court are the Plaintiffs' and the Defendant's motions for summary judgment filed on June 30, 2010. See Docket Nos. 11 and 14. The parties filed responses on July 26, 2010. See Docket Nos. 21 and 22. The parties filed reply briefs on August 9, 2010. See Docket Nos. 24 and 25. For the reasons set forth below, the Plaintiffs' motion for summary judgment is denied and the Defendant's motion for summary judgment is granted.

I.      **BACKGROUND**

The Plaintiffs are residents of North Dakota, Oregon, Connecticut, and Colorado and own real property in Mountrail County, North Dakota.  Defendant Hess Corporation is a Delaware corporation with its principal place of business in the State of New York.  The Plaintiffs own the real property described as:

> Township 156 North, Range 94 West of the 5th P.M.
> Section 19: Lots 3, 4, E ½ SW ¼, E ½

See Docket No. 1-1.

In May 2004, the Plaintiffs, or their predecessors in interest, leased their mineral rights in the real property to Diamond Resources, Inc.  Axel Anderson, Arvid Anderson, Irene Anderson, Cora Anderson, Oscar Anderson, and Beatrice Anderson signed their leases ("the Anderson leases") on May 3, 2004.  Upon Axel Anderson's death, his interest passed to Plaintiffs Jerome Anderson, Patricia Barstad, Joan Barstad, Jane Craft, and Peggy Cowan.  Arvid Anderson and Irene Anderson conveyed their interest to Plaintiff Jerome Anderson as Trustee of the Anderson Family Mineral Trust.  Plaintiff Cora Anderson conveyed her interest to Plaintiff John Anderson and retained a life interest.  Plaintiffs Donald Tarczanin and Susan Tarczanin signed their lease ("the Tarczanin lease") on May 10, 2004.  Diamond Resources, Inc., transferred the leases to R.T. Duncan, Inc., who then transferred the leases to Duncan Oil Partners.  Duncan Oil Partners transferred the leases to Amerada Hess Corporation, now known as Hess Corporation, on December 30, 2004.

The leases are identical.  Each includes the following Pugh clause:[1]

> Notwithstanding the provisions of this lease to the contrary, this lease shall terminate at the end of the primary term as to all of the leased lands except those within a producing or spacing unit prescribed by law or administrative authority on which is located a well producing or capable of producing oil and/or gas or on which lessee is engaged in drilling or reworking operations.  However, this lease shall not terminate as to any of the leased lands so long as drilling or reworking operations are being continuously prosecuted, that is, if not more than one (1) year shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of another well.

See Docket No. 1-1.  The leases' habendum clause[2] states:

> 1.       It is agreed that this lease shall remain in force for a term of Five (5) years from this date and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided.  If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith; and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well.  If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof shall cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole.  If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas is produced from the leased premises or on acreage pooled therewith.

---

[1]  The North Dakota Supreme Court has explained, "A Pugh clause is 'a type of pooling clause which provides that drilling operations on or production from a pooled unit or units shall maintain the lease in force only as to lands included within such unit or units.'" Egeland v. Cont'l Res., Inc., 2000 ND 169, ¶ 4 n.4, 616 N.W.2d 861 (citing 8 P. Martin & B. Kramer, Williams & Meyers Oil and Gas Law Manual of Terms, p. 879 (1999); Olson v. Schwartz, 345 N.W.2d 33, 41 n.3 (N.D. 1984) (Schneider, D.J., specially concurring)).

[2]  "A habendum clause sets forth 'the duration of the grantee's or lessee's interest in the premises.'" Egeland, 2000 ND 169, ¶ 3 n.1 (citing 8 P. Martin & B. Kramer, Williams & Meyers Oil and Gas Law Manual of Terms, p. 479 (1999); Olson, 345 N.W.2d at 36).

<u>See</u> Docket No. 1-1.

  In 2008 and 2009, Hess Corporation engaged in activities in preparation of drilling a well on a spacing unit that includes the real property in question. On October 27, 2008, Hess Corporation surveyed and staked a well. On December 28, 2008, it submitted an application for a permit to drill to the Oil and Gas Division of the North Dakota Industrial Commission. The application was approved on January 2, 2009. On January 23, 2009, Hess Corporation moved equipment to the well location and began to prepare the surface. On February 6, 2009, the pad was leveled and lazered. Hess Corporation finished digging the drilling pit on February 13, 2009. The pit was lined with gravel and clay on March 3, 2009. Hess Corporation widened the access road to the well and drilled the rat hole[3] for the main conductor pipe on April 27, 2009. Tanks used to store drilling fluid were moved to the location on April 30, 2009. Hess Corporation drilled the mouse hole on May 1, 2009. The company planned to move Nabors Rig 460 to the well prior to May 3, 2009, but problems at another well prevented that arrival date. The well was spud[4] on May 11, 2009. The well was continuously drilled until total depth was reached on June 26, 2009. The well was completed on June 30, 2009, and has produced continuously.

  On May 7, 2009, Hess Corporation's landman, Michael Allen, contacted Jerome Anderson to negotiate an extension or renewal of the leases. Allen offered to increase the royalty in exchange for an extension of the leases. On May 8, 2009, Jerome Anderson rejected Allen's offer.

---

  [3] The "rat hole" is "[a] shallow hole drilled adjacent to the well hole for the placement of certain tools or parts of the drilling rig equipment during its operation." It is synonymous with "mouse hole." Williams & Meyers, <u>Manual of Oil and Gas Terms</u> (2009).

  [4] Williams and Meyers define "spudding in" as "[t]he first boring of the hole in the drilling of an oil well." Williams & Meyers, <u>Manual of Oil and Gas Terms</u> (2009).

The Plaintiffs filed a complaint in state court in Mountrail County, North Dakota on September 22, 2009. <u>See</u> Docket No. 1-1. On October 9, 2009, Hess Corporation removed the action to federal district court and answered and counterclaimed. <u>See</u> Docket Nos. 1 and 2. The Plaintiffs contend the leases expired prior to the date the well was spud. Hess Corporation contends the leases did not expire because it was engaged in drilling operations on the real property prior to the expiration of the leases' primary term. Both parties have submitted excellent briefs which are thorough and well-researched.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure permits parties to file for summary judgment. "Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law." <u>Davison v. City of Minneapolis, Minn.</u>, 490 F.3d 648, 654 (8th Cir. 2007) (quoting <u>Hughes v. Stottlemyre</u>, 454 F.3d 791, 796 (8th Cir. 2006)). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Neither the Plaintiffs nor the Defendant contend there is a genuine issue of material fact.

This action is based on diversity jurisdiction. Therefore, the Court will apply the substantive law of North Dakota. <u>Paracelsus Healthcare Corp. v. Philips Med. Sys.</u>, 384 F.3d 492, 495 (8th Cir. 2004) (citing <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938)).

III.   **LEGAL DISCUSSION**

The parties filed cross-motions for summary judgment.  The Plaintiffs and Hess Corporation each seek quiet title as to the interest in the leases.  The Plaintiffs also seek damages and attorney's fees for Hess Corporation's failure to release the leases, willful trespass, wrongful extraction of minerals, and under N.D.C.C. § 38-08-08.  In addition, the Plaintiffs have asked the Court to certify a question to the North Dakota Supreme Court.


A.   **CERTIFIED QUESTION**

Rule 47 of the North Dakota Rules of Appellate Procedure permits the North Dakota Supreme Court to answer questions of law certified to it by federal courts and appellate courts of other states if the following conditions are met:

> (1) questions of law of [North Dakota] are involved in any proceeding before the certifying court which may be determinative of the proceeding;
>
> (2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of [North Dakota].

Certification of a question of law to a state court "rests in the sound discretion of the federal court." Perkins v. Clark Equip. Co., 823 F.2d 207, 209 (8th Cir. 1987) (quoting Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974)).  The Eighth Circuit Court of Appeals has explained, "[A]bsent a 'close' question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to determine all issues before it."  Id. (quoting Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153, 1157 n.2 (8th Cir. 1985)).  The Eighth Circuit Court of Appeals has also stated:

> In the absence of controlling precedent in the decisions of the [state supreme court] which would enable this court to reach a sound decision without indulging in

speculation or conjecture, we believe the better practice is to seek a definitive resolution of this state law question[] by the [state supreme court].

Kulinski v. Medtronic Bio-Medicus, Inc., 112 F.3d 368, 372 (8th Cir. 1997) (quoting Kaiser v. Memorial Blood Ctr. of Minneapolis, Inc., 938 F.2d 90, 93-94 (8th Cir. 1991)).

The Plaintiffs request the Court certify the following question to the North Dakota Supreme Court:

> Under mineral leases that provide for termination of the leases at the end of the primary term as to all of the leased lands except those lands on which lessee is "engaged in drilling", does the phrase "engaged in drilling" require a lessee to have a drilling bit attached to a drilling rig penetrate the ground before the end of the primary term, in order to extend the leases?

See Docket No. 18.  The Court declines to certify a question of law to the North Dakota Supreme Court.  As discussed below, the question posed by the Plaintiffs, focusing on the phrase "engaged in drilling," is not determinative of this proceeding.  Further, the Court need not engage in speculation or conjecture regarding state law in deciding these motions.


**B.    QUIET TITLE**

To decide whether the Plaintiffs or Hess Corporation are entitled to judgment as a matter of law, the Court must determine the proper interpretation of the phrase "drilling or re-working operations."  The Pugh clause states, in part:

> [T]his lease shall not terminate as to any of the leased lands so long as drilling or reworking operations are being continuously prosecuted, that is, if not more than one (1) year shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of another well.

See Docket No. 1-1 (emphasis added).  The habendum clause states, in part:

> If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in

drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith; and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well.

See Docket No. 1-1 (emphasis added). The Plaintiffs contend the phrase should be read as "drilling" and "re-working operations." Hess Corporation contends the phrase should be read as "drilling operations" and "re-working operations."

The Plaintiffs argue that Hess Corporation was not engaged in drilling until the well was spud on May 11, 2009, and thus the Anderson leases expired on May 3, 2009, and the Tarczanin lease expired on May 10, 2009. Hess Corporation argues it was engaged in drilling operations prior to May 3, 2009, and the leases did not expire at the end of the primary term. The parties agree that Hess Corporation was not engaged in "re-working operations" at any time.

The North Dakota Supreme Court has explained its approach when interpreting oil and gas leases:

The same general rules that govern interpretation of contractual agreements apply to oil and gas leases. Johnson v. Mineral Estate, Inc., 343 N.W.2d 778, 780 (N.D. 1984). The construction of a written contract to determine its legal effect is a question of law for the court to decide, and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation of it. West v. Alpar Resources, Inc., 298 N.W.2d 484, 490 (N.D. 1980). Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties. Grynberg v. Dome Petroleum Corp., 1999 ND 167, ¶ 10, 599 N.W.2d 261. We also construe contracts in light of existing statutes, which become part of and are read into the contract as if those provisions were included in it. Reed v. University of North Dakota, 1999 ND 25, ¶ 22 n.4, 589 N.W.2d 880. A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the true intent of the parties. Miller v. Schwartz, 354 N.W2d 685, 688 (N.D. 1984).

Egeland, 2000 ND 169, ¶ 10.

8

1)      **PUGH CLAUSE**

The Plaintiffs argue the Pugh clause supersedes the other provisions of the lease.  They contend the phrase at the beginning of the Pugh clause, "Notwithstanding the provisions of this lease to the contrary . . ." makes the Pugh clause "the controlling paragraph."  See Docket Nos. 1-1 and 18.  The North Dakota Supreme Court has explained the purpose of a Pugh clause "'is to protect the lessor from the anomaly of having the entire property held under a lease by production from a very small portion,' and the clause is designed to 'foster[] reasonable development of leased property.'" Egeland, 2000 ND 169, ¶ 17 (quoting Sandefer Oil & Gas, Inc. v. Duhon, 961 F.2d 1207, 1209 (5th Cir. 1992)) (alteration in original).  The first sentence of the Pugh clause in this case provides:

> Notwithstanding the provisions of this lease to the contrary, this lease shall terminate at the end of the primary term <u>as to all of the leased lands except those within a producing or spacing unit</u> prescribed by law or administrative authority on which is located a well producing or capable of producing oil and/or gas or on which lessee is engaged in drilling or reworking operations.

See Docket No. 1-1 (emphasis added).  The real property in question is located within the spacing unit for the well Hess Corporation ultimately drilled.  The language in the Pugh clause should be read in connection with the rest of the lease to determine the parties' intentions, but the Court finds the Pugh clause itself is not applicable to the circumstances presented here.  See Miller, 354 N.W2d at 688 ("A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the true intent of the parties").

2)      **DRILLING OR RE-WORKING OPERATIONS**

The Plaintiffs argue the leases expired at the end of the primary term because Hess Corporation was not then engaged in drilling.  Hess Corporation contends the leases did not expire

because at the end of the primary term it was engaged in drilling operations.  Professors Williams
and Meyers define the terms "drilling" and "drilling operations."  "Drilling" is defined as the "[a]ct
of boring a hole through which oil and/or gas may be produced if encountered in commercial
quantities."  Williams & Meyers, <u>Manual of Oil and Gas Terms</u> (2009).  They define "drilling
operations" as follows:

> Any work or actual operations undertaken or commenced in good faith for
> the purpose of carrying out any of the rights, privileges or duties of the lessee under
> a lease, followed diligently and in due course by the construction of a derrick and
> other necessary structures for the drilling of an oil or gas well, and by the actual
> operation of drilling in the ground.

<u>Id.</u>  This Court has explained, "Drilling operations commence when (1) work is done preparatory
to drilling, (2) the driller has the capability to do the actual drilling, and (3) there is a good faith
intent to complete the well.  It is not necessary that the drill bit actually penetrate the ground."
<u>Murphy v. Amoco Prod. Co.</u>, 590 F. Supp. 455, 458 (D.N.D. 1984) (internal citations omitted).

While the North Dakota Supreme Court has not specifically interpreted the phrase "drilling
or re-working operations," it has cited case law that reveals the proper interpretation.  In <u>Serhienko
v. Kiker</u>, 392 N.W.2d 808 (N.D. 1986), the North Dakota Supreme Court determined whether an oil
company was engaged in re-working operations.  The North Dakota Supreme Court cited to
Alabama case law that held "principles for determining what constitutes 'drilling operations' are
applicable for determining what constitutes 'reworking operations' in lease provisions." <u>Serhienko</u>,
392 N.W.2d at 812 (citing <u>Sheffield v. Exxon Corp.</u>, 424 So.2d 1297, 1303 (Ala. 1982)).  The lease
at question in <u>Sheffield</u> contained language similar to the leases in this case:

> If at the expiration of the primary term, oil, gas or other mineral is not being
> produced on said land, or on acreage pooled therewith, but Lessee is then engaged
> in drilling or reworking operations thereon . . . the lease shall remain in force so long
> as operations are prosecuted with no cessation of more than sixty (60) consecutive

10

days, and if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith.

Sheffield, 424 So.2d at 1300 (emphasis removed) (omission in original).  The Alabama Supreme

Court explained:

> Many oil, gas, and mineral leases now contain cessation of production clauses.  These clauses generally provide for termination of the lease in the event that certain time periods expire without the operator or lessees having prosecuted "drilling" or "reworking" operations.  Therefore, we intend to express guidelines as to what types of operations constitute drilling or reworking under Alabama law, but with the *caveat* that each case must be determined by its own particular facts.

Id. at 1302.  The Alabama Supreme Court thus read the phrase "drilling or reworking operations"

as referring to "drilling operations" and "reworking operations."  The North Dakota Supreme

Court's favorable citation to Sheffield, indicates the phrase "drilling or re-working operations"

includes "drilling operations" and "re-working operations."

The Alabama Supreme Court's interpretation of the phrase is also supported by the plain

language of the lease.  The habendum clause reads as follows:

> 1.    It is agreed that this lease shall remain in force for a term of Five (5) years from this date and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided.  If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or re-working operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith; and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well.  If after discovery of oil or gas on said land or on acreage pooled therewith, the production thereof shall cease from any cause after the primary term, this lease shall not terminate if Lessee commences additional drilling or re-working operations within ninety (90) days from date of cessation of production or from date of completion of dry hole.  If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease

11

shall continue in force so long as oil or gas is produced from the leased premises or
on acreage pooled therewith.

See Docket No. 1-1 (emphasis added).  The use of the term "operations" after the phrase "drilling

or re-working operations" indicates that "drilling" and "re-working" are adjectives that modify the

noun "operations."  The Plaintiffs do not cite any case law interpreting the phrase "drilling or re-

working operations" so as to exclude "drilling operations."  The Court finds the phrase "drilling or

re-working operations" is not ambiguous and includes both "drilling operations" and "re-working

operations."  Thus, the Plaintiffs' contention that Hess Corporation had to be "engaged in drilling"

to extend the leases beyond the primary term is without merit.


### 3)     DRILLING OPERATIONS

Hess Corporation contends it was engaged in drilling operations at the end of the primary

term.  As noted above, this Court has explained, "Drilling operations commence when (1) work is

done preparatory to drilling, (2) the driller has the capability to do the actual drilling, and (3) there

is a good faith intent to complete the well.  It is not necessary that the drill bit actually penetrate the

ground."  Murphy, 590 F. Supp. at 458 (internal citations omitted).  The Alabama Supreme Court

held in Sheffield, "The key element" in determining what constitutes drilling operations "is whether

the operation is associated or connected with the physical site of the well or unit."  Sheffield, 424

So.2d at 1302.

In Murphy, the oil company had staked and surveyed the well location, obtained a drilling

permit, worked on the access road, moved a rig onto the site, drilled a hole for the conductor pipe,

and was within hours of spudding the well when it was forced to stop by a temporary restraining

order.  Murphy, 590 F. Supp. at 458.  This Court held these activities constituted drilling operations

that extended the lease beyond the primary term, noting, "[S]pudding is not the only act which triggers an automatic extension such as the one in this lease. Defendant began sufficient preparatory acts a reasonable time before the expiration date." Id. at 459.

Courts in other jurisdictions have held activities similar to those conducted in Murphy to constitute drilling operations. See, e.g., Vickers v. Peaker, 300 S.W.2d 29, 31-32 (Ark. 1957) (surveying and clearing site, constructing road, obtaining permit, bringing material onto site); Allen v. Cont'l Oil Co., 255 So.2d 842, 844-46 (La. Ct. App. 1971) (digging slush pit, building road, drilling hole for conductor pipe); Johnson v. Yates Petroleum Corp., 981 P.2d 288, 290-91 (N.M. Ct. App. 1999) (staking and surveying, obtaining permit, clearing site, working on road); Guleke v. Humble Oil & Ref. Co., 126 S.W.2d 38, 41-42 (Tex. Ct. Civ. App. 1938) (beginning to erect derrick, bringing pipe, a drill for digging water well, and other materials onto site). Professor W.L. Summers' treatise on oil and gas law explains the general rule:

> The general rule seems to be that actual drilling in unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning of a well or drilling operations within the meaning of this clause of the lease. If the lessee has performed such preliminary acts within the time limited, and has thereafter actually proceeded with the drilling to completion of a well, the intent with which he did the preliminary acts are unquestionable, and the court may rule as a matter of law that the well was commenced within the time specified by the lease.

2 W.L. Summers, Oil and Gas § 349 (1959).

Prior to the end of the primary term, Hess Corporation surveyed and staked a well, obtained a permit to drill from the Oil and Gas Division of the North Dakota Industrial Commission, leveled and lazered the pad, dug the drilling pit and lined it with gravel and clay, widened the access road

13

to the well, drilled the rat hole for the main conductor pipe, moved equipment to the location, and drilled the mouse hole.  See Docket No. 13.  Hess Corporation performed work preparatory to drilling, and Hess Corporation's capability to do the drilling and good faith intent to complete the well are evidenced by the fact the company completed the well on June 30, 2009, and the well has continuously produced.  See Murphy, 590 F. Supp. at 458 (explaining the elements of drilling operations).  The Court finds, as a matter of law, that Hess Corporation engaged in drilling operations, thus extending the leases beyond the primary term.


III.    **CONCLUSION**

The Court has carefully reviewed and considered the entire record.  Based on this review, the Court finds there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law.  The Plaintiffs' motion for summary judgment is **DENIED** and the Defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 25th day of August, 2010.

_/s/  Daniel L. Hovland_____
Daniel L. Hovland, District Judge
United States District Court

14